**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 09 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN G. DRENDALL**
**MARK J. TORMA**
South Bend, Indiana

ATTORNEY FOR APPELLEE
INDIANA DEPT. OF CHILD SERVICES:

**SHARON R. ALBRECHT**
South Bend, Indiana

ATTORNEY FOR APPELLEE
DCS CENTRAL ADMINISTRATION:

**ROBERT J. HENKE**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF CHILDREN ALLEGEED TO BE CHILDREN IN NEED OF SERVICES, | ) ) ) | |
| D.H. & G.H., (Minor Children) | ) ) | |
| And | ) ) | |
| D.B.H., (Father) | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 71A03-1109-JC-425 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable J. Eric Smithburn, Senior Judge
Cause Nos. 71J01-1007-JC-268 & 71J01-1007-JC-269

**May 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

### Case Summary

D.B.H. ("Father") appeals from the juvenile court's determination that his son and daughter, D.H. and G.H., are Children in Need of Services ("CHINS"). Father contends that the evidence is insufficient to support the juvenile court's conclusion that he sexually molested the children and that their physical and mental health were seriously impaired or endangered as a result of his inability, refusal, or neglect to supply them with shelter. Because we determine that the evidence is sufficient to support the juvenile court's conclusions regarding the children's molestation and inadequate shelter, we affirm.

### Facts and Procedural History

Father and M.R.S. ("Mother") have four children together, including D.H., born May 26, 1999, and G.H., born May 9, 2001.[1] Father and Mother divorced in 2002. In January 2009, the St. Joseph County Department of Children and Family Services ("DCS") received a report that Father had molested G.H., who was seven years old at the time. David Kristofski, a DCS family case manager, assessed the report, which indicated that on January 19, 2009, Mother took G.H. to the doctor because she found blood in G.H.'s underwear. The medical professional who examined G.H. noted irregularities and irritation in the vaginal area. Kristofski reported the suspected molestation to authorities,

---

[1] Mother and Father's two eldest children, E.H. and C.H., are not at issue in this appeal. For this reason, we discuss only D.H. and G.H., and all references to "the children" pertain only to D.H. and G.H.

who conducted a forensic interview with G.H. at a local child advocacy center in February 2009. During the interview, G.H. reported that Father had penetrated her vagina with his penis twice. DCS substantiated the allegations of molestation by Father. Though the children visited Father periodically in Indiana, the children were living with Mother in Michigan at the time. DCS closed the case and reported its findings to the Michigan Department of Human Services.

A year later, DCS received a second report that Father had molested one of the children. The report alleged that Father had penetrated D.H.'s anus with his penis when D.H. was seven years old. D.H., then ten years old, confirmed this allegation to authorities. DCS substantiated the allegations of molestation by Father. Because the children were still living in Michigan with Mother, DCS again closed the case and forwarded its finding to Michigan authorities.

DCS received a third report just four months later, in July 2010. This report again pertained to G.H. DCS family case manager Erin Wilson assessed the report. Wilson requested G.H.'s medical records and reviewed the family's history with DCS. G.H.'s medical records indicated that at a doctor's appointment on May 15, 2010, G.H. reported pain associated with urination, brown vaginal discharge, and abdominal pain. The doctor's notes for that visit indicated that then-nine-year-old G.H. was demonstrating classic signs of sexual abuse. Wilson continued her investigation by traveling to Father's home to speak with the children. When she arrived, she found that the front door was not working, there was no electricity or running water, the children's mattresses were on the floor in the living room, there were holes in the roof, the walls and floors were

unfinished, and siding was missing from the exterior of the home. *See* Tr. p. 97. Wilson removed the children from the home and substantiated allegations of neglect by Father.

In July 2010, DCS filed a verified CHINS petition as to both children. In addition to the unsafe living conditions of the home, the CHINS petition alleged that Father had molested D.H. and G.H. Mother admitted to the allegations, but Father denied the allegations. A fact-finding hearing was held in June 2011. D.H. and G.H. testified at the hearing by closed-circuit television.

D.H. testified about the alleged molestation, stating that Father "stuck his penis in my butt." *Id.* at 23. D.H. could not recall the date of the incident, but he said that it happened when Father lived in a trailer and specifically, that it happened in the bathroom after D.H. got out of the bathtub. As D.H. recalled the event, "He put me up against the wall and put his penis in my butt." *Id.* at 25. D.H. testified that when he told Father to stop, Father told him to shut up. On cross-examination, Father's counsel pressed for more details about the incident. He asked D.H. how tall he was at the time, and D.H. replied that he was "um, four foot, maybe." *Id.* at 29. Counsel also asked how D.H. and Father were positioned, and D.H. replied that his stomach was pressed against the wall and Father was standing behind him. Although D.H. indicated that he could not recall whether Father touched him with his hands, he said that he did remember previously saying that Father's hands were at his side during the incident. *Id.* at 30-31.

G.H. also testified and recalled speaking to authorities at the child advocacy center and going to the doctor. She did not testify to the details surrounding these events. However, the medical records from G.H.'s 2009 and 2010 doctor's appointments were

4

entered into evidence. The juvenile court also heard testimony from Barbara Ramenda, the CASA assigned to work with D.H. and G.H. CASA Ramenda's written report was also entered into evidence without objection by Father. The report detailed the children's involvement with DCS, including G.H.'s 2009 disclosure to authorities that Father had penetrated her vagina with her penis twice and D.H.'s 2010 report that Father sodomized him. *See* DCS's Ex. 6. Father also testified and denied molesting the children. On cross-examination, counsel for DCS showed how Father might have sodomized a four-foot-tall D.H. Counsel asked Father to stand and illustrate how his height could be shortened by bending at the knee, aligning his genital region with the approximate height of then-seven-year-old D.H.'s bottom. *See* Tr. p. 208-09.

After hearing this and other testimony, the juvenile court took the matter under advisement. In July 2011, the court entered a fact-finding order. The court found that DCS had proven by a preponderance of the evidence that:

> 2. [T]he physical and mental condition of [D.H. and G.H.] is seriously impaired or seriously endangered as the result of the inability, refusal[,] or neglect of Father to supply the minor children with necessary shelter.
>
> 3. [D.H. and G.H.] need care, treatment[,] or rehabilitation that they are not receiving and are unlikely to be provided or accepted without the coercive intervention of the Court.
>
> 5. [D.H.] is a victim of sex abuse perpetrated by Father . . . .
>
> 6. [G.H.] is a victim of sex abuse perpetrated by Father . . . .
>
> 8. [D.H.] is living in a household with a victim of a sex offense . . . .
>
> 9. [G.H.] is living in a household with a victim of a sex offense . . . .

5

10. [D.H. and G.H.] need care, treatment[,] or rehabilitation that they are not receiving and are unlikely to be provided or accepted without the coercive intervention of the Court . . . .

Appellant's App. p. 36 (formatting altered).[2] The juvenile court found D.H. and G.H. to be CHINS. Father now appeals.

**Discussion and Decision**

On appeal, Father contends that the evidence is insufficient to support the juvenile court's conclusions that he sexually molested the children and their physical and mental health were seriously impaired or endangered as a result of his inability, refusal, or neglect to supply them with shelter.

Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. Ind. Code § 31-34-12-3; *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Upon review of a juvenile court's CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences therefrom. *In re T.S.*, 881 N.E.2d 1110, 1112 (Ind. Ct. App. 2008). We neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* Here, the juvenile court made findings of fact and conclusions of law in adjudicating the children CHINS. When a juvenile court enters specific findings and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the

---

[2] Father filed a separate Appellant's Brief and Appellant's Appendix for D.H. and G.H., though the materials are nearly identical. For the sake of clarity, we refer to D.H.'s brief and appendix unless otherwise noted.

findings support the judgment.  *Id.*  We will set aside the juvenile court's judgment only if it is clearly erroneous.  *Id.*

## I. Indiana Code Section 31-34-1-3(a)

Father first contends that the evidence is insufficient to support the juvenile court's determination that D.H. and G.H. are CHINS under Indiana Code section 31-34-1-3(a), which provides:

> A child is a child in need of services if, before the child becomes eighteen (18) years of age:
>> (1) the child is the victim of [an enumerated] sex offense . . . ; and
>> (2) the child needs care, treatment, or rehabilitation that:
>>> (A) the child is not receiving; and
>>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

We first address Father's claims with regard to D.H.  Father contends that the only evidence in the record on this issue, D.H.'s testimony, does not support the juvenile court's conclusion that Father sodomized D.H.  Specifically, Father argues that it was not physically possible for him to have sodomized D.H. without touching him, as D.H. testified, because of the differences in their respective heights at the time the incident allegedly occurred.  At the fact-finding hearing, counsel for DCS simulated for the juvenile court that the sodomy could have occurred the way D.H. described it if Father bent his knees.  *See* Tr. p. 208-09.  To the extent Father argues that this is not an adequate explanation, he invites us to reweigh the evidence, which we may not do.  We conclude that there is sufficient evidence to support the juvenile court's determination that D.H. is a CHINS under Indiana Code section 31-34-1-3(a).[3]

_____

[3] Father argues that D.H.'s testimony was incredibly dubious.  The incredible dubiosity rule applies only in very narrow circumstances.  *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002).  Specifically,

Father also argues that that there is no evidence that he molested G.H. More precisely, Father contends that the evidence presented by DCS at the fact-finding hearing was inadmissible because it consisted of statements made by G.H. to her doctor, and these statements were not made under oath. Further, Father claims that "the prior reports of [G.H.'s] statements were hearsay because [G.H.] was not subject to cross-examination about them, having failed to repeat them when she did take the witness stand." Appellant's Br. p. 19.

These arguments miss their mark. At the fact-finding hearing, Father objected to the admission of G.H.'s medical records, which contained the statements made by G.H. The juvenile court redacted G.H.'s statements that did not pertain to diagnosis or treatment. *See* Tr. p. 57-58, 67, 70. There is no requirement that the remaining statements—those made for diagnostic or treatment purposes—be made under oath. *See* Ind. Evidence Rule 803(4). Because G.H.'s other statements were redacted, we cannot see how the juvenile court relied on inadmissible evidence. Father makes no specific challenge on appeal to the admission of other evidence of G.H.'s molestation, such as G.H.'s doctor's findings and G.H.'s previous disclosures that Father had penetrated her

---

the rule applies only where a single witness presents inherently contradictory testimony that is equivocal or the result of coercion, and there is a total lack of *circumstantial evidence of the defendant's guilt*. *Thompson v. State*, 765 N.E.2d 1273, 1274 (Ind. 2002). By its nature, the incredible dubiosity rule applies in criminal cases. Because we have found no CHINS case applying the rule, we decline to do so here.

Even if we were to find that the rule applies in CHINS cases, we would not find D.H.'s testimony incredibly dubious. D.H.'s testimony was not equivocal or contradictory. Further, D.H.'s description of his Father standing behind him and holding him against the wall and the sodomy that followed is not inherently improbable—in fact, counsel for DCS simulated for the juvenile court that Father could do this without holding onto D.H. if Father bent his knees. In light of this, we would not impinge on the juvenile court's assessment of D.H.'s credibility.

vagina with his penis.[4]  We conclude that the evidence is sufficient to support the juvenile

court's determination that G.H. is a CHINS under Indiana Code section 31-34-1-3(a).

Finally, Father's remarks on the children's susceptibility to suggestion and attacks

on their credibility do not support his cause.  When reviewing a juvenile court's CHINS

determination, we do not reassess the credibility of the witnesses.  *In re T.S.*, 881 N.E.2d

at 1112.[5]

## II. Indiana Code Section 31-34-1-1

Father also contends that the evidence is insufficient to support the juvenile court's

determination that D.H. and G.H. are CHINS under Indiana Code section 31-34-1-1,

which provides:

> A child is a child in need of services if before the child becomes eighteen
> (18) years of age:
> > (1) the child's physical or mental condition is seriously impaired or
> > seriously endangered as a result of the inability, refusal, or neglect of
> > the child's parent, guardian, or custodian to supply the child with
> > necessary food, clothing, shelter, medical care, education, or
> > supervision; and
> > (2) the child needs care, treatment, or rehabilitation that:
> > > (A) the child is not receiving; and
> > > (B) is unlikely to be provided or accepted without the
> > > coercive intervention of the court.

---

[4] In his reply brief, Father makes a general assertion that "the many documents relied on by DCS are inadmissible" and that "Father has always and still is objecting to the exhibits . . . ."  Appellant's Reply Br. p. 11.  However, the juvenile court sustained numerous objections by Father on hearsay grounds, and as previously noted, Father did not object to the entry of CASA Ramenda's written report. In addition, Father's generic claim regarding "hearsay reports," "many documents," and "the exhibits" is not sufficiently specific to inform us of what documents or particular statements Father challenges.

[5] To the extent Father challenges the juvenile court's conclusion that D.H. and G.H. were living in the same household as a victim of a sex offense, this argument fails because it is based upon his claim that there is insufficient evidence that he molested the children.  Because we affirm the juvenile court's finding to the contrary, this argument has no merit.  The juvenile court did not err in concluding that each child was living in the same household as the victim of a sex offense.  *See* Ind. Code § 31-24-1-3(b)(1).

DCS family case manager Wilson testified that Father's home did not meet minimum standards for habitability. Among other things, the home lacked electricity and running water, had no bathing area for the children, had holes in the roof, and had unfinished walls and the floors. Notably, Father does not challenge these facts. He instead argues that the house was in the midst of repairs and that he did not want Mother to send the children to stay at the home "while it was in that transitional state." Appellant's Br. p. 20. Father also argues that "there is no evidence on the record that [D.H. or G.H. were] either actually seriously impaired in any way or actually put in danger as a result of staying in Father's home during this time." *Id.*

Even if Father did not want the children to stay in the home in its dilapidated state, this does not change the fact that they were present at that time. Moreover, Father's argument that there was no serious impairment or actual danger to the children amounts to nothing more than an invitation to reweigh the evidence, which we may not do. Nonetheless, we reiterate that CHINS statutes do not require that a court wait until a tragedy occurs to intervene—a child is a CHINS when he or she is endangered by parental action or inaction. *Roark v. Roark*, 551 N.E.2d 865, 872 (Ind. Ct. App. 1990). Based on the undisputed state of Father's home, the juvenile court did not err in concluding that D.H. and G.H.'s physical and mental health were seriously impaired or endangered as a result of Father's inability, refusal, or neglect to supply them with shelter.[6]

---

[6] In his reply brief, Father argues for the first time that the care and rehabilitation needed to address the condition of his housing was "not only likely to be provided, it was, in fact, in the process of being provided and has been provided all this time, all without the coercive intervention of the court." Appellant's Reply Br. p. 15. We decline to respond to this new argument as the purpose of a reply brief is

The foregoing evidence supports the juvenile court's findings, and the findings support the juvenile court's determination that D.H. and G.H. are CHINS. We conclude that the DCS has proved by a preponderance of the evidence that the children are CHINS pursuant to Indiana Code sections 31-34-1-3(a) and 31-34-1-1.

Affirmed.

CRONE, J., and BRADFORD, J., concur.

---

to respond to the appellee's arguments, not to raise new issues. *See* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief.").

Nevertheless, this argument is not persuasive. Father contends that the downstairs area of the house is now in a suitable condition for the children. This does not negate the fact that the home was previously uninhabitable and Father himself states that repairs are ongoing. It is reasonable to conclude that the CHINS action was necessary to bring about these repairs.