**Marc HAGGERTY and Tony White,
Appellants (Petitioners Below),**

v.

**BLOOMINGTON BOARD OF PUBLIC
SAFETY, Appellee (Respondent
Below).**

**No. 4–184A29.**

Court of Appeals of Indiana,
Fourth District.

Feb. 13, 1985.

Guy R. Loftman, Colman & Loftman,
Attys., Professional Corp., Bloomington,
for appellants.

Linda Runkle, Chief Deputy City Atty.,
Harriet Lipkin, City Atty., Legal Dept.,
City of Bloomington, Bloomington, for appellee.

CONOVER, Judge.

Plaintiffs-Appellants Marc Haggerty
(Haggerty) and Tony White (White) appeal
the Monroe Superior Court III's denial of
their Verified Petition for Temporary Restraining Order and Injunction against defendant-appellee Bloomington Board of
Public Safety (Board). They sought admittance to an executive session of the Board
open to bona fide members of the press
only, not the public.

Appeal dismissed.

ISSUES

This appeal presents the following issues:

1.  Whether this appeal is moot.

2.  Whether Haggerty and White were
bona fide members of the press.

3.  Whether the Board's standards for
determining who were "bona fide" members of the press denied Haggerty and
White their First Amendment freedoms.

4.  Whether Haggerty and White were
denied procedural due process.

5.  Whether the trial court abused its
discretion in overruling Haggerty and
White's petition.

Because this appeal is moot, we discuss
only the first issue.

FACTS

Denver Smith, an Indiana University
football player, was shot by members of
the Bloomington Police Department prior
to September 27, 1983. On September 27
and 28, 1983, the Board in executive ses-

sion received testimony from five Bloomington police officers who were involved in the shooting. The Board felt a prompt investigation of this tragic event was necessary, but exclusion of all members of the press would only fuel a "smoldering public paranoia" which surrounded this event. It determined to admit "bona fide" members of the press to its executive session but not the public. Further, it released both transcripts and tape recordings to the public as soon as they were available.

White's principle occupation was substitute teaching for the Monroe County Community Schools. However, he was a part time professional free lance writer who had been published and paid for his work in the past. Haggerty was an electrician, but also was an amateur free lance print media and radio reporter. He had never been paid for his reporting work.

On the morning of September 27 prior to the Board's executive session both White and Haggerty contacted the editor/publisher of the Bloomington City Magazine, a newly-formed publishing entity, secured identification cards, and sought entry to the Board's executive session based thereon. Under their agreement with the editor/publisher, they were to prepare articles concerning their investigations of the Smith affair and submit them to the magazine. There was no understanding, however, they would be paid for what they produced. This magazine ordinarily did not pay its contributing authors for the materials it published.

When White and Haggerty presented their credentials, the Board was informed the five police officers who were to testify would refuse to do so if White and Haggerty gained entry as members of the press. The Board then established a two-pronged test to determine what persons applying for admittance to the session were "bona fide" members of the press. They were
(a) those persons who
(1) were protected by the Indiana Press Shield statute, or
(2) previously had received an Indiana State Police press pass.

Because White or Haggerty did not qualify under either prong, they were excluded from the session. They immediately filed their petition with the trial court. It was denied, and they were not admitted to the Board's executive session.

White and Haggerty appeal.

DISCUSSION AND DECISION

The Board claims the instant action is moot because its executive session was held and concluded: thus, no actual controversy presently exists between these parties.

Appellants, conceding the "press only" executive session is over, contend the underlying dispute between these parties is one "capable of repetition, yet evading review," citing *Nebraska Press Ass'n v. Stuart* (1976), 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683. They posit other hearings may be held by the Board in the Denver Smith matter or comparable events, and like frustrations of appellate review are likely to occur if the mootness doctrine is here applied. The Board, however, counters the "capable of repetition, yet evading review" exception applies only when

1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and 2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

*Weinstein v. Bradford* (1975), 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, *relying upon Sosna v. Iowa* (1975), 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532. The Board says because nothing in the record indicates it will be conducting the "press only" meetings in the future as to the Smith matter, this appeal fails the second stage of the above-mentioned test.

It is hornbook law a reviewing court will not determine moot or abstract questions. As noted by Ratliff, J., an issue becomes "moot" when

1. it is no longer "live" or when the parties lack a legally cognizable interest in the outcome;

2. the principal questions in issue have ceased to be matters of real controversy between the parties; or

3. the court on appeal is unable to render effective relief upon an issue.

*Bartholomew County Hospital v. Ryan* (1982), Ind.App., 440 N.E.2d 754, 757. It is the universal practice of Indiana courts to dismiss an appeal where it becomes unnecessary to decide the question presented. *Id.; Dunn v. State* (1904), 163 Ind. 317, 321, 71 N.E. 890, 891. It is clear the Board's "press only" executive session is long since over, and another such session is unlikely to recur in the Denver Smith case. Thus, there is no reasonable expectation appellants will be subjected to the same action again by the Board. The issues here presented, then, are moot.

■ We may consider, however, moot issues if they are of great public interest, but this exception may be invoked

... only upon the confluence of three elements: the issue involves a question of great public importance which is likely to recur in a context which will continue to evade review.

*Bartholomew County Hospital*, 440 N.E.2d at 759. *Also, see Indiana Education Employment Relations Board v. Mill Creek Classroom Teachers Association* (1983), Ind., 456 N.E.2d 709, 711–712; *Krochta v. State* (1978), 175 Ind.App. 436, 372 N.E.2d 475, 478–479. The issues here presented do not meet these criteria. While public agencies are authorized by law to hold executive sessions

. . . . .

(v) with respect to any individual over whom the governing body has jurisdiction: to receive information concerning the individual's alleged misconduct, and to discuss, prior to any determination, that individual's status as an employee

. . . . .

IND.CODE 5–14–1.5–6, appellants present no evidence and we deem it highly unlikely public agencies will conduct executive sessions to which members of the press are invited but the public excluded on a fre-

quently recurring basis in the future. The act's provisions authorize private discussions in executive sessions by agency members. Executive sessions are private meetings of members and are not convened for publicity purposes.

The issues in this appeal are moot, and no great public interest appears.

Appeal dismissed.

MILLER, P.J., and YOUNG, J., concur.