**Charles ROARK, Appellant,**

**v.**

**Lisa ROARK, Christina Roark, Charles Roark, Samantha Roark, Porter County Department of Public Welfare, April Barden, Appellees.**

No. 64A03–8808–CV–265.

Court of Appeals of Indiana,
Third District.

March 19, 1990.

Marcia L. Gienapp, Legal Services of Northwest Indiana, Inc., Valparaiso, for appellant.

John P. Shanahan, Petry, Fitzgerald & Shanahan, Hebron, for appellees.

STATON, Judge.

Charles Roark appeals from dispositional orders entered in the Porter County Juvenile Court which placed his four children in foster care following a determination that the children were Children in Need of Services (CHINS).[1] Roark challenges the CHINS findings and dispositional orders on several grounds; appellees April Barden, the Porter County Department of Public Welfare, and the Roark children by guardian *ad litem* raise one issue which we also address. Consolidated and restated, the issues are:

---

1. CHINS determinations are not final, appealable judgments prior to disposition. *Matter of* M.R. (1983), Ind.App., 452 N.E.2d 1085, 1089.

1. Whether this appeal should be dismissed as moot?
2. Whether the trial court erred in admitting the hearsay statements of the Roark children at the fact-finding hearing?
3. Whether the evidence is sufficient to support the judgment of the trial court?
4. Whether the trial court erred in delaying reunion of the family until psychological testing could be completed?

We affirm.

Charles Roark and April Barden are the parents of four children: L.R. (b. December 15, 1977); Ca.R. (b. October 20, 1978); Cs.R. (b. March 3, 1980); and S.R. (b. August 28, 1983). Barden and Roark divorced in September of 1985. Roark received sole custody of the children.

On January 19, 1988, the Porter County Department of Public Welfare (D.P.W.) received a report indicating that the daughter of Roark's girlfriend had received second and third degree burns on her face, torso, and back.

An investigation revealed that the injuries were sustained while the youngster, A.J., was in Roark's care. On petition by the D.P.W., the Porter Juvenile Court issued emergency detention orders for the Roark children and the injured child.

Pursuant to statute, a detention hearing was held on January 22, 1988. *See* West's AIC 31-6-4-6 (Supp.1989). The court found probable cause to believe that the Roark children were Children in Need of Services and ordered their placement in foster care. The D.P.W. thereafter filed CHINS petitions, upon which a fact-finding hearing was held on March 4, 1988.

At the close of evidence, the trial court declared the Roark children to be Children in Need of Services. Dispositional orders were entered on May 6, 1988, which continued the childrens' foster care placement pending psychological assessments of the family members.

In accordance with IC 31-6-4-19(b), a review hearing was held on July 8, 1988. The Roark children were returned to their father's care at that time with the condition of continued supervision by the D.P.W. On January 6, 1989, following the initiation of this appeal, the Porter County Juvenile Court held a second review hearing. At that time, D.P.W. supervision was discontinued and the cause was dismissed.

## I.

### *Moot*

■ The D.P.W.[2] contends that this appeal should be dismissed as moot by virtue of the dismissal of this action by the trial court and because the Roark children have long since been reunited with their father. The D.P.W. argues that, as a result of the dismissal and reunification of the family, there remains no justiciable controversy nor means available to this court to change the status quo. Roark counter-argues that a CHINS finding presents collateral consequences serious enough to justify consideration of this appeal on its merits. We agree with Roark.

■ An appeal or an issue becomes moot when:

1. it is no longer "live" or when the parties lack a legally cognizable interest in the outcome;
2. the principal questions in issue have ceased to be matters of real controversy between the parties; or
3. the court on appeal is unable to render effective relief upon an issue.

*Haggerty v. Bloomington Board of Public Safety* (1985), Ind.App., 474 N.E.2d 114, 115–116. Because this court decides only real controversies or questions, we dismiss appeals which raise moot or abstract propositions. *Perkins v. Kocher* (1988), Ind. App., 531 N.E.2d 231, 233. However, the appeal before us is not moot. An appeal may be heard which might otherwise be dismissed as moot where leaving the judgment undisturbed might lead to negative collateral consequences. *In Re Marriage of Stariha* (1987), Ind.App., 509 N.E.2d

---

**2.** The appellees will hereinafter be collectively referred to as D.P.W.

1117, 1123. The reasoning behind this exception is that "it is far better to eliminate the source of a potential legal disability than to require the citizen to suffer the possibly unjustified consequence of the disability itself for an indefinite period of time." *Id.; citing Sibron v. New York* (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.

We conclude that this appeal is not moot because of the potentially devastating consequences of a CHINS determination. Under West's AIC 31–6–8–1(b)(3) (Supp.1989), the record of a CHINS proceeding is available to any criminal court judge or authorized staff member for use in a pre-sentence investigation. Under IC 31–6–8–1(b)(4) and (5), the record of a CHINS proceeding is available to the prosecutor, the Department of Public Welfare, and the Department of Corrections. Use of this record by the prosecutor is not a remote possibility as at the time this appeal was initiated, Roark was faced with a child neglect charge stemming from the incident where A.J. was burned. The record may also be used to impeach Roark as a witness in any future criminal case or discredit his reputation if placed in issue. IC 31–6–8–1(g). Too, the records would be available for Barden's use in any future action regarding custody or support of the Roark children. IC 31–6–8–1(b)(6). Most importantly, however, we note that CHINS determinations often accumulate and in extreme cases result in the termination of parent child relationship. *See Wardship of Nahrwold v. Department of Public Welfare of Allen County* (1981), Ind.App., 427 N.E.2d 474, 482, *trans. denied*, (Staton, J. dissenting). For these reasons, we review the merits of this appeal.

## II.

### *Hearsay*

Over Roark's objections to hearsay, a deputy from the Porter County Sheriff's Department and a D.P.W. caseworker were allowed to testify at the fact-finding hearing as to what the Roark children told them about the incident in which the child, A.J., was burned. Roark was not the child's father, but was babysitting her while his girlfriend worked. Briefly, the hearsay evidence admitted shows that four-year old S.R. told the caseworker that her father had "drownded" A.J. by repeatedly pushing her face and body into a bathtub full of hot water. S.R. said her father was angry at A.J. because she would not sit down in the bathtub or stop crying. She said her father had also tried to "drownded" her in the past. Nine-year-old Ca.R. told the sheriff's investigator that her father had repeatedly pushed A.J. into the water and had also purposely pushed A.J.'s head into a wall. She had earlier told the caseworker that her father had instructed her to say that A.J. had been injured when S.R. caught drips of hot water in a teacup and poured them on A.J. Ca.R. also told the investigator that Roark had given S.R. a nosebleed that same day by shoving her into a wall.

West's AIC 31–6–3–2(a)(1) gives parents, guardians or custodians involved in CHINS proceedings the right to cross-examine witnesses. Roark argues that the admission of the above-referenced hearsay was in violation of this right, citing several delinquency cases to support his argument. *See e.g. Simmons v. State* (1978), 175 Ind. App. 333, 371 N.E.2d 1316 (hearsay rule applies in juvenile proceedings). As Roark points out, our courts have not had occasion to directly address the subject of the proper use of hearsay in CHINS proceedings. However, several recent legislative enactments have obviated the need to fashion our conclusion from essentially unrelated authority.

One of the stated purposes of the Indiana Juvenile Code is "to provide a judicial procedure that insures fair hearings and recognizes and enforces the constitutional and other legal rights of children and their parents." West's AIC 31–6–1–1(2). However, it has been stated that "in all cases affecting the lives of children, the primary concern of the courts is the welfare of the child". *County Department of Public Welfare of St. Joseph County v. Morningstar* (1958), 128 Ind.App. 688, 151 N.E.2d 150, 156, *trans. denied.* In order

to reconcile these sometimes opposing concerns, our legislature has created several methods by which a parent's right to cross-examine witnesses can be protected while also protecting children from the trauma of testifying in court. West's AIC 31-6-15-2 (Supp.1989) provides:

A statement or videotape that:

(1) is made by a child who was under ten (10) years of age at the time of the statement or videotape;

(2) concerns an act that is a material element in determining whether a child is a child in need of services; and

(3) is not otherwise admissible in evidence under statute or court rule;

is admissible in evidence in an action described in section 1 of this chapter if the requirements of section 3 of this chapter are met.

This statute applies to "actions initiated to determine if a child is a child in need of services under IC 31-6-4-3(a)(1) through IC 31-6-4-3(a)(5)." IC 31-6-15-1; IC 31-6-15-2. In order to render a child's videotape or statement admissible under this statute, a hearing must be held, with the child in attendance, during which the trial court must determine that: the statement contains sufficient indicia of reliability, and; either that the child will testify at the CHINS proceeding or that the child is unavailable as a witness due to trauma, medical difficulties, or legal incompetence. IC 31-6-15-3.[3] Using similar criteria prerequisite to admissibility, our legislature has also enacted statutes which permit the trial court to order, on motion, that a child's testimony be videotaped or transmitted via closed circuit television. See West's AIC 31-6-16-1 *et seq.* (Supp.1989). In such cases attorneys for all parties, or the parties themselves if not represented, may question the child. IC 31-6-16-6; IC 31-6-16-7.

■ We are satisfied that in enacting the child hearsay statute, our legislature intended that hearsay statements attributed to a child under the age of 10 *must* be considered in the manner set forth in IC 31-6-15-3 for their admission in CHINS proceedings. This was not done in the case before us. The record shows that the trial court admitted the hearsay statements of the Roark children solely on the opinion offered by the childrens' guardian *ad litem* that it would be too traumatic for the children to testify. As a result, their hearsay statements were inadmissible and cannot be considered in addressing the question of whether there was sufficient evidence to support the CHINS finding.

### III.

#### *Sufficiency*

Roark next contends that, absent the inadmissible hearsay statements of his children, the evidence of abuse or neglect presented at the fact-finding hearing was insufficient to support the CHINS finding. We disagree.

It is well established that when we review a case in which a trial court has entered findings of fact and conclusions of law, we will not set aside the judgment of the trial court unless it is clearly erroneous. Indiana Rules of Procedure, Trial Rule 52(A); *In Re Wardship of B.C.* (1982), Ind., 441 N.E.2d 208, 211. A trial court's findings of fact, conclusions of law and judgment are considered to be "clearly erroneous" only if a review of the entire record leaves us with a definite and firm conviction that a mistake has been made. *Skweres v. Diamond Craft Company* (1987), Ind.App., 512 N.E.2d 217, 219, *reh. denied.* In reviewing findings of fact made by the trial court, we neither reweigh the evidence nor judge the credibility of witnesses. Rather, we consider only the evidence and reasonable inferences drawn therefrom which support the judgment. *Craig v. ERA Mark Five Realtors* (1987), Ind.App., 509 N.E.2d 1144, 1147. The standard of proof in a CHINS proceeding is a

---

**3.** IC 31-6-15-1 *et seq.* is identical in substance to the child hearsay statute enacted to protect children involved in criminal proceedings. *See* West's AIC 35-37-4-6. In *Miller v. State* (1987), Ind., 517 N.E.2d 64, our supreme court determined that proper application of the procedures incorporated in the statute adequately protects a defendant's right to cross-examine witnesses.

preponderance of the evidence. West's AIC 31–6–7–13(a) (Supp.1989).

■ The record of this case shows that the D.P.W. began its involvement with the Roark family in 1982. At that time, the D.P.W. received a complaint that the Roark household was dirty and without food for the children. The D.P.W. investigation showed that child neglect was indicated and that the children were thin and receiving marginal care. A caseworker was assigned to supervise the case.

An abuse complaint was received in 1985. Neglect was substantiated after an investigation revealed that Cs.R. had received rope burns around his neck while in Roark's care. The rope burns resulted from fighting among the children while they were unsupervised. Later that year, abuse was substantiated against Barden after a complaint was received indicating that her boyfriend had slapped the children on their mouths and legs during a visit.

A complaint was received in March of 1987 alleging that the Roark children were not being fed, that the father drank extensively and used a belt on the children hard enough to leave welts, and that the oldest girl, then nine years old, was responsible for cooking and caring for her siblings. After an investigation, the D.P.W. concluded that neglect was substantiated and that abuse was indicated. Roark agreed to consider attending parenting classes at that time.

April Barden testified to the disciplinary tactics Roark employed during the course of their marriage. Barden testified that she considered it part of her job as Roark's wife to keep the children away from him because "if they did something, he would just start swinging the belt." Record at 144. Roark often whipped his children with a belt for such reasons as fighting among themselves or for having touched any of their father's belongings. Barden testified that she had often seen bruises on the childrens' buttocks and legs as a result of the whippings. She also saw finger bruises on their faces where their father had slapped them. In one instance, Roark became enraged at his son apparently because of his refusal to go to sleep. In administering punishment, Roark swung his belt upward with such velocity as to leave an indentation in the ceiling where the belt buckle connected. In another incident, Roark held his son's hand over an open flame on the stove as a means of teaching him of the dangers of playing with fire. As alternative punishment, this same child was sometimes forced to assume and maintain a push-up position until he cried in pain. Barden also stated that Roark often locked his children in their rooms in the middle of the day while he took naps. The children were all under the age of eight when the above-referenced incidents occurred.

Roark's account of the events which led to A.J.'s injuries is the only non-hearsay evidence on the subject. Roark testified that he had put A.J., S.R. and Ca.R. in the bathtub at approximately 7:00 p.m., then left them with the water running as he went to get towels. Roark testified that, while he was out of the room, he heard the shower turn on and then A.J.'s cries. Roark returned to the bathroom, where Ca.R. told him that A.J. had fallen. A.J. appeared red, as if she had a sunburn, but had stopped crying. The children finished their bath and went to bed without further incident. A.J.'s mother returned at approximately 1:00 a.m. that same evening. The next morning, A.J.'s skin was red and her face blistered and swollen. Roark testified that he then encouraged A.J.'s mother to seek medical assistance. However, A.J. did not receive medical attention until five o'clock that evening. Roark also testified that he had pushed S.R. aside while installing panelling later that evening and that she appeared with a bloody nose several minutes thereafter. He did not remember whether S.R. hit a wall or received the bloody nose as a result of his having shoved her.

At the close of evidence, the trial court declared the Roark children to be CHINS pursuant to IC 31–6–4–3(a)(2) upon finding the following allegations of the D.P.W. to be true:

1. On or about January 18, 1988, eighteen (18) month old A.J. received second and third degree burns to her face, chest, back, and buttocks while under the supervision of Charles Roark;

2. That Charles Roark failed to obtain prompt medical attention for A.J.;

3. Charles Roark uses excessive physical and emotional discipline on his children, including the use of a belt.

Record at 58–61.

Roark argues that the evidence does not support the first finding of the trial court in that: no doctor testified to the nature of the injuries A.J. received; there was no evidence that A.J. sustained burns to her buttocks; and there was no evidence establishing A.J.'s exact age. We are not persuaded that these discrepancies render the trial court's findings clearly erroneous.

■ It was established through the testimony of a D.P.W. caseworker that A.J. had been admitted to a local hospital "for second and third degree burns on her face, back, chest, petechiae, and bruising on her left buttocks." Record at 108. There was no objection lodged to this testimony. We conclude that it is sufficient to establish that A.J. sustained second and third degree burns to her face, back and chest. Whether the portions of her body which were burned included her buttocks is inconsequential. In addition, the record establishes that A.J. was a child young enough to require a babysitter. We can presume from this that she was among that group intended to be protected under the CHINS statutes; i.e., those under the age of 18. See IC 31–6–4–3. That the trial court entered a precise age unsupported by the evidence does not render its findings clearly erroneous.

■ Roark also argues that the events testified to by his ex-wife were too remote to support the trial court's third finding, i.e., that he "uses" excessive physical discipline. We agree that a CHINS determination cannot be based solely on remote instances of abuse or neglect. See Matter of D.T. (1989), Ind.App., 547 N.E.2d 278; Wardship of Bender (1976), 170 Ind.App. 274, 352 N.E.2d 797, reh. denied (termination of parental rights cannot be based solely on conditions which existed in the past but which no longer exist). However, past neglect or abuse can be considered. Id. Nonetheless, Roark admitted to the sheriff's investigator shortly after A.J. was burned that his disciplinary methods with his children, who were ages four through ten at the time, still included the use of a belt. With respect to this, Roark urges that his disciplinary tactics fall squarely within his "right" to use reasonable corporal punishment. See IC 31–6–4–3(e). We disagree. The incidents Barden testified to constitute what we consider child abuse. Holding a child's hand over a burning flame, regardless of whether the child is injured, is emotional abuse of the highest order and speaks for itself in terms of causing psychological damage to a child. Too, we do not consider that we stretch ourselves in stating that use of a belt on any child under the age of ten is an unreasonable form of corporal punishment. This finding is amply supported by the evidence.

Finally, Roark urges that the findings regarding A.J.'s injuries do not support the judgment. The trial court determined that the Roark children were CHINS based upon IC 31–6–4–3(a)(2), which provides that a child is a Child in Need of Services if before the child's eighteenth birthday:

the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian;

\*　　\*　　\*　　\*　　\*　　\*

and needs care, treatment, or rehabilitation that the child is not receiving, and that is unlikely to be provided or accepted without the coercive intervention of the court.

Roark claims that the language of this statute requires that the child of the guardian, custodian or parent must have sustained injury due to the act or omission of the guardian, custodian or parent. He also points out that none of his own children were injured when taken into custody. There is some support to be found for Roark's position in IC 31–6–4–3(b), which

defines an "omission" under 31–6–4–3(a)(2) as:

> an occurrence in which the parent, guardian, or custodian allowed *that person's child* to receive any injury that the parent, guardian, or custodian had a reasonable opportunity to prevent or mitigate. (Emphasis added.)

However, we consider it unnecessary to split such hairs in order to resolve the question before us.

■ It is provided in IC 31–6–7–13(c) that:

> Evidence that a prior or subsequent act or omission by a parent, guardian, or custodian injured *any child* is admissible in proceedings alleging that a child is a child in need of services:
>
> (1) to show intent, guilty knowledge, the absence of mistake or accident, identification, the existence of a common scheme or plan, or *other similar purposes;* and
>
> (2) to show a likelihood that the act or omission of the parent, guardian, or custodian is responsible for the child's current injury or condition. (Emphasis added.)

We conclude that this provision may be used to fulfill the "injury" requirement of IC 31–6–4–3(a)(2) where it is also shown that the child of the parent, guardian or custodian has been injured in the past by their action or inaction. As has been stated, the CHINS statutes do not require that the courts and the Welfare Department wait until a tragedy occurs to intervene; a child is a Child in Need of Services when it is *endangered* by parental action or inaction. *Parker v. Monroe County Department of Public Welfare* (1989), Ind.App., 533 N.E.2d 177, 179. Certainly, a child who has been injured in the past by a parent may be considered endangered when that parent's acts or omissions cause injuries as severe as those sustained in this case to another child in the parents' care.

A trial court's findings "will be construed together, and construed liberally, in favor of the judgment." *Masson Cheese Corporation v. Valley Lea Dairies* (1980), Ind.App., 411 N.E.2d 716, 718, *trans. denied.* The findings concerning A.J.'s injuries support the judgment by establishing a recent link in the chain of injuries caused to children by Roark's acts or omissions. Roark's past acts of "excessive discipline" resulted in welts and bruises on his children; Roark's current failure to adequately supervise his girlfriend's daughter resulted in severe burns to her body which went untreated for 24 hours. Under these conditions, we conclude that the trial court properly intervened to correct a dangerous, ongoing pattern of abuse and neglect. For the reasons stated above, we cannot find the trial court's judgment or findings clearly erroneous.

## IV.

### *Delayed Reunion*

Finally, Roark argues that the dispositional orders were in error for delaying reunion of his family until psychological testing could be completed. Roark contends that the testing should have been performed when he gave his consent for testing on the entire family prior to the dispositional hearing. The D.P.W. contends that it could not perform such testing without order of the court, which order was given at the time the dispositional orders were entered.

■ We conclude that this issue is moot. The children were reunited with their father two months after the dispositional orders were entered. Even if error was committed in delaying reunion of the family, we cannot restore the time which was lost and therefore have no remedy for any alleged violation of Roark's rights. Unlike the preceding issues, there is no collateral consequence to override that portion of the mootness doctrine which precludes review of error where such could not result in a change of the status quo. We also consider that the question is not one which falls into the public interest exception to the mootness doctrine. *See In re Marriage of Stariha, supra.* For these reasons, we decline to review this issue on its merits.

Affirmed.

MILLER, J., concurs.

GARRARD, P.J., concurs in result.