**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 10 2013, 8:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
DCS, Marion County Local Office
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS, Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF A.W. & C.S., Children In Need of Services, | ) |
| and, | ) |
| L.D. Mother, | ) |
| Appellant-Respondent, | ) |
| vs. | ) No. 49A02-1208-JC-692 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Danielle Gaughan, Magistrate
Cause No. 49D09-1203-JC-10824 & 10825

April 10, 2013

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

L.D. ("Mother") appeals the trial court's determination that her two children, A.W. and C.S., are children in need of services ("CHINS"). We affirm.

## Issue

Mother raises one issue, which we restate as whether there is sufficient evidence to support the finding that A.W. and C.S. are CHINS.

## Facts

Mother has two children, A.W., who was born in 1996, and C.S., who was born in 2010. C.S.S. ("Father") and Mother married in 2006, and C.S.S. is the father of C.S.[1] Mother and Father have been separated since 2010.

On March 12, 2012, Mother took C.S. to the hospital because he had smashed his finger. While at the hospital, workers became concerned with Mother's behavior and called the Department of Child Services ("DCS"). DCS investigated allegations of Mother's "paranoid schizophrenic and flights of ideas" and "bizarre behavior" at the hospital. Tr. p. 69. Mother had claimed that the hospital staff was part of the Ku Klux Klan and that she took one pain pill for "Lola" and another for "Lolita." Id. at 82. When DCS family case manager Monique Roberts arrived, Mother was in a private room at the

---

[1] R.W. is the father of A.W., and he is not participating in this appeal. C.S.S. is also not participating in this appeal.

hospital complaining of arm pain. Mother said she was involved in an altercation with a hospital security officer. DCS placed C.S. in Father's care, and A.W. in her aunt's care.

On March 16, 2012, the trial court authorized DCS to file a CHINS petition, and during the initial hearing, Mother became disruptive and argumentative, and the trial court asked her to leave. Mother then claimed that Father had raped A.W., which A.W. denied. DCS filed a petition alleging that A.W. and C.S. were CHINS. DCS alleged that A.W. and C.S.'s physical or mental condition was seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of Mother to supply them with the necessary food, clothing, shelter, medical care, education, or supervision. Specifically, DCS alleged the children were CHINS because:

> [Mother] has failed to and/or is unable to provide the children with a safe, stable, and appropriate living environment. [Mother] has mental health issues that have not been adequately addressed and that seriously hinder her ability to appropriately parent the children. [Mother] also lacks stable housing, and she relies heavily on the support of others to meet the children's basic needs. She has failed to take necessary action to obtain treatment for her mental health needs, and the coercive intervention of the Court is therefore necessary to ensure the children's safety and well being.

App. p. 36.

At a fact-finding hearing on the CHINS petition, evidence was presented that a home-based case manager working with Mother suggested that she complete a mental health assessment, but Mother said that she did not need it but "maybe the other providers needed it." Tr. p. 88. Mother thought that providers were "out to sabotage her," and she wanted to move to another state to "get away from providers." Id. at 89. Mother also

3

claimed that Father's twin was C.S.'s biological father, but Father does not have a twin brother. Mother has accused her sister and DCS workers of having relationships with Father. Mother has also claimed that A.W. has a twin, but there is no evidence to suggest that A.W. has a twin. Mother was disruptive and erratic during meetings with DCS workers. Mother did not have stable housing and repeatedly moved in with different relatives. She was unemployed and claimed to be a student at two universities.

Father testified that Mother has had extreme paranoid behaviors for several years and that she claims to hear voices. Mother accused Father of breaking into her house, cutting her hair while she was sleeping, and poisoning her by sticking needles into the soles of her feet while she was sleeping. Father was stationed in Iraq, but he had to return early due to Mother's behavior on the military base.

The trial court entered findings of fact and conclusions thereon finding that A.W. and C.S. were CHINS. The trial court found that it was in A.W. and C.S.'s best interests to be removed from their home environment because the allegations of the CHINS petition were "admitted or found to be true." App. p. 30. A.W. continued her placement with relatives, and C.S. continued his placement with Father. Mother now appeals.

**Analysis**

Mother argues that the trial court erred when it found that A.W. and C.S. were CHINS. A CHINS proceeding is a civil action. In re K.D., 962 N.E.2d 1249, 1253 (Ind. 2012). Thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." Id. We neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the trial

4

court's decision and reasonable inferences drawn therefrom. Id. We reverse only upon a showing that the decision of the trial court was clearly erroneous. Id.

There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. Id. Indiana Code Section 31-34-1-1 provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> (A) the child is not receiving; and
>
> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

We have held that a parent's lack of cooperation in DCS services is probative in highlighting his or her inability or refusal to care for the children. In re A.C., 905 N.E.2d 456, 462 (Ind. Ct. App. 2009). The CHINS statute does not require that a court wait until a tragedy occurs to intervene. Roark v. Roark, 551 N.E.2d 865, 872 (Ind. Ct. App. 1990). Rather, a child is a CHINS when he or she is endangered by parental action or inaction. Id.

Mother argues that the evidence is insufficient to show A.W. and C.S. are endangered or neglected. DCS alleged in the CHINS petition that A.W.'s and C.S.'s physical or mental conditions were seriously impaired or seriously endangered as a result

of the inability, refusal, or neglect of Mother to supply them with necessary food, clothing, shelter, medical care, education, or supervision. Specifically, DCS alleged that Mother lacked stable housing, relied on others to provide the children's basic needs, and had mental health issues that seriously hindered her ability to parent the children.

At the fact-finding hearing, DCS presented evidence that Mother's behavior has been bizarre and erratic. Mother has refused to participate in a mental health assessment and was uncooperative with service providers. Mother has not had stable housing and has repeatedly moved in with various relatives. Mother is not employed and claimed to be a student at two universities. We conclude that the trial court properly determined A.W. and C.S. are CHINS because they are seriously endangered by Mother's mental status and lack of stability and proper care is unlikely to be provided without the coercive intervention of the court. Despite Mother's arguments, we need not wait until a tragedy involving A.W. or C.S. occurs before determining that they are CHINS.

## Conclusion

The trial court properly determined that A.W. and C.S. are CHINS. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.