**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 28 2013, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
DCS Marion County Local Office
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MATTER OF: | ) | |
| D.H. and D.H., | ) | |
| CHILDREN IN NEED OF SERVICES, | ) | |
| | ) | |
| D.H. (Father), | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1210-JC-827 |
| | ) | |
| MARION COUNTY DEPARTMENT OF | ) | |
| CHILD SERVICES, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| CHILD ADVOCATES, INC., | ) | |
| | ) | |
| Appellee-Guardian Ad Litem. | ) | |
| | ) | |

APPEAL FROM THE MARION SUPERIOR COURT – JUVENILE DIVISION
The Honorable Marilyn A. Moores, Judge
The Honorable Danielle Gaughan, Magistrate
Causes Nos. 49D09-1206-JC-22703 & 49D09-1206-JC-22704

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Father appeals the trial court's determination that his sons, D.L.H. and D.H., are children in need of services ("CHINS"). Father argues there is insufficient evidence to support the trial court's CHINS determination. Because we conclude that there is sufficient evidence to support the adjudication, we affirm.

## Facts and Procedural History

Father has two sons, D.L.H., born August 30, 2004, and D.H., born February 2, 2007.[1] Both children have asthma. DCS first became involved with the family in 2008 because the children were not getting medical care for their asthma. In an effort to ensure that they would get regular medical care, the children were enrolled in Riley Hospital for Children's high-risk asthma clinic. In May 2012, DCS received a report that the parents were not bringing the children to their clinic appointments. A DCS family case manager, Eric Woods, met with the parents to discuss the children's medical care.

Mother told FCM Woods that the children had not been to the clinic because she had transportation problems.[2] Mother admitted, however, that she knew she could get free transportation to the clinic through the Medicaid cab program, but she did not take advantage of the program. Mother also indicated that she was having substance-abuse

---

[1] We refer to the children as D.L.H. and D.H. due to their similarly spelled names.

[2] We discuss Mother only as necessary to explain this case's progression; Mother does not participate in this appeal.

problems, she and Father had recently separated, and Father was the family's only source of income. FCM Woods also spoke to Father, who indicated that he had recently been hospitalized in Georgia and during that time, he could not take the children to their clinic appointments.

In June 2012, due to the parents' ongoing failure to provide medical care for D.L.H. and D.H., DCS filed a CHINS petition for both children. At an initial hearing, the parents denied the allegations in the CHINS petition. The trial court allowed the children to remain in their parents' care, but it ordered Mother and Father to ensure the children attended all their clinic appointments and also to participate in home-based therapy, case-management services, and random drug screens. An evidentiary hearing on the CHINS petition was scheduled for September 4, 2012. Although neither parent attended the hearing, both were represented by counsel.

At the hearing, DCS established the parents' failure to ensure that the children received medical care as well as Father's refusal to participate in services. A social worker from Riley Hospital, Erin McKalips, testified that as clinic participants, D.L.H. and D.H. were supposed to be seen by a clinic doctor every six to eight weeks and required daily medication. Tr. p. 21. The children had been accepted into the clinic because they qualified as high-risk patients due to their "chaotic living environment." *Id.* at 24. Chaotic, in this case, meant:

> In the matter of a year, [F]ather presented to the clinic, missing medications because of two house fires, or kitchen fires. A third time because someone came into the home and stole the [children's] medications. And he also reported they've had to move a couple times because of mold in the home and at one point, there was a report filed for domestic violence at bedside,

3

while a patient at Methodist Hospital. So there [are] just concerns that multiple cris[e]s, events happened in . . . their lives.

*Id.* McKalips also expressed concern about her most recent interaction with Father, during which he was "falling asleep in the exam room during conversation" and slurring his words. *Id.* McKalips went on to summarize the parents' compliance with clinic requirements in the past two years, saying that both children missed a number of scheduled appointments. D.H., specifically, had nineteen clinic appointments scheduled, but his parents brought him to only seven. *Id.* at 34. Before his most recent appointment, D.H. had been absent from the clinic for ten months. *Id.* at 34-35. McKalips also said that the parents failed to fill the children's prescriptions in July, noting that the parents told her they filled prescriptions at CVS and that she had called CVS to confirm that the prescriptions were not filled. *Id.* at 39-40. She said the parents had filled the children's prescriptions for the month of August, however.

DCS FCM Elizabeth Plew, who made therapy and drug-screen referrals for the family after the initial hearing, testified that Father had refused to take random drug screens and to participate in home-based services. *Id.* at 47. FCM Plew also had concerns about the children's medical care, noting that D.H.'s asthma had led to him being "admitted four times to the ICU and then [he] had three additional trips to the ER just this year." *Id.* at 46. After the hearing, the trial court determined that D.L.H. and D.H. were CHINS. Father now appeals.

4

## Discussion and Decision

On appeal, Father argues that there is insufficient evidence to support the trial court's determination that his sons are CHINS. The CHINS petition was based on Indiana Code section 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> > (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
> >
> > (2) the child needs care, treatment, or rehabilitation that:
> >
> > > (A) the child is not receiving; and
> > >
> > > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

"Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). When the trial court's judgment includes findings of fact and conclusions of law, we apply a two-tiered standard of review and may not set aside the findings or judgment unless they are clearly erroneous. *In re A.C.*, 905 N.E.2d 456, 461 (citing *Parmeter v. Cass Cnty. Dept. of Child Servs.*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007)). We first consider whether the evidence supports the factual findings and then whether the findings support the judgment. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We give due

5

regard to the trial court's ability to assess witness credibility and will not reweigh evidence. *Id.* Rather, we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.*

Father claims there is insufficient evidence in the record to support the trial court's determination that the children are CHINS. We disagree. Both children have severe asthma and due to their parents' failure to provide them with medical care in the past, they are enrolled in a clinic for high-risk asthma sufferers. Father knew the children required clinic check-ups every six to eight weeks as well as daily medication.[3] Nonetheless, a social worker from Riley testified that the parents were not bringing the children to their regularly scheduled clinic appointments—D.H., specifically, attended only seven of his last nineteen scheduled doctor's appointments and had recently gone ten months without being brought into the clinic. The parents also failed to fill the children's prescriptions in the month of July. And Father's younger son D.H., had not fared well in the months leading up to the hearing: FCM Plew testified that D.H. had been "admitted four times to the ICU and then [he] had three additional trips to the ER just this year."[4] Tr. p. 46. Father argues that after the CHINS filing, the children had attended one scheduled doctor's appointment, and at the time of the hearing, were current on their medication. But this short period of compliance with the children's medical

---

[3] In its order formally adjudicating the children CHINS, the trial court noted that Father was not familiar with the medications the children were prescribed. Appellant's App. p. 89. Father argues that this fact alone cannot support a CHINS finding. Appellant's Br. p. 13. But Father's familiarity with the children's medications, or lack thereof, is just one factor that the trial court considered. And the evidence as a whole supports the trial court's conclusion that the children are CHINS.

[4] Father claims that DCS did not prove that his actions directly caused these hospitalizations. Appellant's Br. p. 12. But DCS need not do so; DCS must only prove that the children are impaired or endangered and that they need care they are not currently receiving. DCS has done so here.

plans is dwarfed by the parents' history of noncompliance, which stems back to 2008 and most recently caused D.H. to be absent from the clinic for nearly a year. We conclude that the trial court properly determined that D.L.H. and D.H. are CHINS because they are seriously endangered by Father's inability to provide them with the medical care they require and proper care is unlikely to be provided without the coercive intervention of the court.

Father's remaining arguments on appeal, particularly his claims regarding his demeanor at the clinic and the possibility that he previously filled the children's prescriptions at an unknown pharmacy, amount to an invitation to reweigh the evidence, which we will not do. The CHINS statute does not require that a court wait until a tragedy occurs to intervene. *See Roark v. Roark*, 551 N.E.2d 865, 872 (Ind. Ct. App. 1990). Rather, a child is a CHINS when he is endangered by parental action or inaction. *Id.* The trial court properly determined that was the case here.

Affirmed.

KIRSCH, J., and PYLE, J., concur.