## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 17 2016, 7:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rebecca R. Vent
Office of the Howard County Public Defender
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of: Child N.J. and J.J., Children in Need of Services, <br><br> N.J. (Father), <br><br> *Appellant-Respondent*, <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner*. | August 17, 2016 <br><br> Court of Appeals Case No. 34A02-1601-JC-87 <br><br> Appeal from the Howard Circuit Court <br><br> The Honorable Lynn Murray, Judge <br><br> Cause Nos. 34C01-1510-JC-318; 34C01-1510-JC-319 |

**Bradford, Judge.**

# Case Summary

Appellant-Respondent N.J. ("Father") appeals from the juvenile court's adjudication that Child N.J. and J.J. (collectively, "the Children") are children in need of services ("CHINS"). In early October of 2015, Appellee-Petitioner the Department of Child Services ("DCS") received a report of drug use in the home of Father, who had primary physical custody of the Children at the time. DCS removed the Children from the home after evidence of a methamphetamine lab was found in Father's home.

DCS petitioned the juvenile court to adjudicate Children to be CHINS. At the initial detention hearing, Mother agreed with the Children's removal from Father's care. At the CHINS hearing in December of 2015, Mother stipulated that the Children were CHINS. Child N.J. testified that Father struck him when Father found out that Child N.J. disapproved of Father's illegal drug activities and that he was afraid to be in Father's home. The juvenile court found the Children to be CHINS and ordered a dispositional hearing. In its dispositional order, the juvenile court ordered that the Children remain in their placement outside of Father's home and that Father and Mother participate in various services. Father challenges several of the juvenile court's findings as unsupported by the record. While we agree with Father's argument regarding one finding, we conclude that that error can only be considered harmless. As such, we affirm.

# Facts and Procedural History

[3]     On October 1, 2015, DCS received reports of drug use in Father's home, which he shared with the Children, Child N.J., (born July 7, 2004) and J.J. (born August 1, 2005). In addition, it was reported to DCS that the Children stayed with friends "off and on[,]" that Father often left them unsupervised, that they would wake up at night to find themselves alone, and that there were bottles in the home containing white powder and "little rocks[.]" Appellant's App. p. 20. J.J. reported that Father had locked her outside in a storm because his friends were over and they did not want her in the house. Child N.J. also reported that Father had struck him when Child N.J. confronted Father about his drug use. On October 2, 2015, the Children were removed from Father's care after a methamphetamine lab was discovered in the home.

[4]     On October 6, 2015, DCS petitioned the juvenile court to have the Children declared CHINS. In summary, the CHINS petitions alleged the following: that Father was operating a methamphetamine lab in his home, Father often leaves the Children unsupervised, Father hit Child N.J. when Child N.J. confronted Father about his drug use, bottles with white power were found in Father's home, Father refused to cooperate with DCS's investigation, and Father is on the Indiana Sex Offender Registry for sexual misconduct with a minor.

[5]     On December 7, 2015, the juvenile court held a CHINS hearing, at the beginning of which Mother, who is not participating in this appeal, stipulated to the allegations in the CHINS petitions and that the Children were CHINS. FCM Duffy testified that following the Children's removal, Father refused to come to the DCS to speak with her and told her that he would contact her

through an attorney but did not. Child N.J. testified that he had seen Sprite bottles in Father's home that contained "[r]ock-type stuff." Tr. p. 27. Child N.J. also testified that the bottles in Father's home made him feel unsafe.

[6] On December 7, 2015, Father submitted to a drug screen, which returned positive results for methamphetamine, amphetamines, THC, and the opiates morphine and 6-Acetylomorphine. Father's drug screen from December 16, 2015, was positive for methamphetamine and amphetamines. The drug screen results were included in the predispositional reports filed on December 23, 2015.

[7] Meanwhile, on December 11, 2015, the juvenile court entered its order declaring the Children to be CHINS. The order contained the following findings:

> 1. [Father and Mother] are the parents of two (2) minor children, namely: [Child N.J.], born July 7, 2004, age [(11)] years; and [J.J.], born August 1, 2005, age ten (10) years.
>
> 2. Father is the children's physical and legal custodian.
>
> 3. According to the Indiana Sex Offender Registry, father's address is [redacted].
>
> 4. On October 1, 2015, DCS received a report alleging concerns for the children while in father's custody, including an allegation that there was drug use in the home and a methamphetamine lab present at the residence[.]
>
> 5. The DCS by [FCM Duffy] investigated the report and spoke with both children regarding the allegations. Father refused to speak with [FCM Duffy]. At the conclusion of its investigation, the DCS removed the children and placed them in foster care and subsequently, relative care.

6.     After a detention hearing held October 6, 2015, the court found the removal of the children from the parents was required for their well-being, and authorized DCS to file petitions alleging each child to be a child in need of services.

7.     A fact-finding hearing was held December 7, 2015. Mother admitted and stipulated to the allegations the children were each a child in need of services.  Evidence was heard, including testimony by [FCM Duffy], the child [Child N.J.], and mother. Father refused to testify.

8.     [Child N.J.] has observed bottles containing rock-like substances at his father's home.

9.     [Child N.J.] is aware other persons have purchased medicines for his father.

10.    [Child N.J.] has heard from father's friend that his father was caught with a meth lab.

11.    After [Child N.J.] asked his father about him using drugs, father hit him.

12.    [Child N.J.] feels unsafe at father's home.

13.    Although not the custodial parent, mother provides necessities for the children such as clothing and school supplies.

14.    Ind. Code § 31-34-1-1 provides a child is a child in need of services if (1) the child's physical or mental condition is seriously impaired or seriously endangered as result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) the child needs care, treatment or rehabilitation that:  (A) the child is not receiving; and (8) is unlikely to be provided or accepted without the coercive intervention of the court.

15.    The court finds that the DCS has proved by a preponderance of evidence that [the Children] are each a child in need of services as defined in Ind. Code § 31-34-1-1.  The court finds by a preponderance of evidence that the children's custodial parent has exposed the children to illegal drug activity placing

their mental and physical condition in serious danger, and the children require the coercive action by the court to place them outside the dangerous environment.

Appellant's App. pp. 10-11.

[8] On January 4, 2016, the juvenile court held a dispositional hearing. That day, the juvenile court issued a dispositional order, concluding that it was in the best interests of the Children to be removed from Father's home because of an inability, refusal, or neglect to provide shelter, care, and/or supervision at that time and that the Children needed protection that could not be provded in Father's home.

[9] The juvenile court adopted the statements made in the predispositional report, including all attachments and exhibits, as findings and made the following findings regarding the situation:

> The Court finds that it is in the best interests of the child[ren] to be removed from the home environment and remaining in the home would be contrary to the welfare of the child[ren] because:
> - of an inability, refusal or neglect to provide shelter, care, and/or supervision at the present time
> - the child[ren] need[] protection that cannot be provided in the home
>
> The Court finds that reasonable efforts to prevent or eliminate removal of the child[ren] were not required due to the emergency nature of the situation, as follows: on October 1, 2015, an active Methamphetamine Lab was found in the home at [redacted]. On October 2, 2015, [J.J.] disclosed that her home is not safe because: [Father] uses methamphetamine, [Father] locked her outside in a storm because his friends were over and they did not want her in the house, [Father] would leave her home alone at

night and she had to fend for herself. On October 2, 2015, [Child N.J.] disclosed knowledge of the Methamphetamine Lab, [Father's] substance abuse, and not being adequately supervised by [Father]. [Child N.J.] further disclosed that when he confronted [Father] about the Methamphetamine Lab, [Father] hit him on the head.

Appellant's App. p. 13.

The Juvenile court ordered that the Children maintain their current placement outside Father's home and Father's participation in parenting, mental health, and substance abuse screens; drug screens; and visitation contingent on negative drug screens.

# Discussion and Decision

With respect to CHINS determinations, the Indiana Supreme Court has stated the following:

> [a] CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the [juvenile] court's decision and reasonable inferences drawn therefrom. *Id*. We reverse only upon a showing that the decision of the [juvenile] court was clearly erroneous. *Id*.
>
> …
>
> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child

a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. *In re N.E.*, 919 N.E.2d at 105.

*In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (footnote omitted).

[12] Indiana Code section 31-34-1-1, which outlines one of the eleven statutory circumstances under which a child is a CHINS if satisfied, provides that a child is a CHINS before the child becomes eighteen years of age if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[13] As the Indiana Supreme Court has observed,

> Juvenile law is constructed upon the foundation of the State's *parens patriae* power, rather than the adversarial nature of *corpus juris. Kent v. United States*, 383 U.S. 541, 554, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). Indeed, juvenile court jurisdiction "is rooted in social welfare philosophy rather than in the *corpus juris.*" *Id.* The purpose of the CHINS adjudication is to "protect the children, not punish parents." *In re N.E.*, [919 N.E.2d 102, 106 (Ind. 2010)]. The process of the CHINS proceeding focuses on "the best interests of the child, rather than guilt or innocence as in a criminal proceeding." *Id.*

*In re K.D.*, 962 N.E.2d at 1255.

[14]    Pursuant to Indiana Code section 31-34-19-10,

> (a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:
>> (1) The needs of the child for care, treatment, rehabilitation, or placement.
>> (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
>> (3) Efforts made, if the child is a child in need of services, to:
>>> (A) prevent the child's removal from; or
>>> (B) reunite the child with;
>
> the child's parent, guardian, or custodian in accordance with federal law.
>> (4) Family services that were offered and provided to:
>>> (A) a child in need of services; or
>>> (B) the child's parent, guardian, or custodian;
>
> in accordance with federal law.
>> (5) The court's reasons for the disposition.
>> (6) Whether the child is a dual status child under IC 31-41.
>
> (b) The juvenile court may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

[15]    Father argues that the juvenile court's conclusion that section 31-34-1-1 was satisfied constitutes an abuse of discretion because the record did not contain sufficient evidence that the Children's physical or mental condition was seriously impaired or seriously endangered. It is worth noting that DCS was not required to establish that the Children had already been harmed. "The CHINS statute … does not require that a court wait until a tragedy occurs to intervene." *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009) (citing *Roark v. Roark*, 551 N.E.2d 865, 872 (Ind. Ct. App. 1990)). "Rather, a child is a CHINS

when he or she is endangered by parental action or inaction." *Id*. Father challenges the juvenile court's findings in its dispositional decree that he exposed the Children to illegal drug use in his home; he abused Child N.J.; Child N.J. feels unsafe in his home; and he failed to properly supervise the Children. We conclude, however, as previously described, that the record contains ample evidence to support the juvenile court's disposition.

## A. Illegal Drug Use

[16] Father argues that the record contains insufficient evidence of illegal drug use in his home, citing the lack of photographic evidence, law enforcement testimony, forensic analysis evidence, and criminal charges. FCM Duffy testified that she received confirmation from her supervisor that a methamphetamine lab had been found in Father's home. DCS also presented evidence that Father told another person that he was caught with a methamphetamine lab in his home and that this person told Child N.J. Child N.J. testified that he observed bottles containing rock-like substances in Father's home and was aware that Father had had other persons buy him medicines. It should also be noted that Father submitted to drug screens on the day of the CHINS hearing and nine days afterwards, both of which indicated positive results for methamphetamine and amphetamines and the first of which also indicated the presence of THC and the opiates morphine and 6-Acetylomorphine.

[17] Moreover, Father refused to testify at the CHINS hearing, invoking his right "to remain silent in regard to a criminal case." Tr. p. 14. It is well-settled that "[a]lthough the refusal to testify in a civil case cannot be used against the one

asserting the privilege in a subsequent criminal proceeding, the privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness'[s] refusal to testify." *Gash v. Kohm*, 476 N.E.2d 910, 913 (Ind. Ct. App. 1985), *trans. denied*. The juvenile court was therefore within its rights to draw a negative inference regarding Father's participation in illegal activity from Father's refusal to testify at the CHINS hearing. Father's argument is an invitation to reweigh the evidence, which we will not do.

## B. Abuse of Child N.J.

[18] Father contends that DCS presented insufficient evidence that he has abused Child N.J. Child N.J. testified that Father "kind of hit me once" when Father found out that Child N.J. was unhappy about Father's drug use. Father now argues on appeal that Child N.J.'s knowledge of Father's drug use was based on hearsay from another individual. Father's argument in this regard is just an invitation to reweigh the evidence, which we will not do.

## C. Child N.J. Feeling Unsafe in Father's Home

[19] Father seems to challenge the juvenile court's finding that Child N.J. feels unsafe in Father's home. When asked if anything in Father's home made him feel unsafe, however, Child N.J. testified "the bottles." Tr. p. 29. At the very least, this testimony supports the juvenile court's finding. Moreover, a reasonable inference can be drawn that Child N.J. felt unsafe because Father

has struck him. Again, Father invites us to reweigh the evidence, which we will not do.

## D. Failure to Supervise

[20] Finally, Father challenges the juvenile court's finding in the dispositional order that Father failed to provide adequate supervision to the Children. DCS concedes that no evidence admitted during the CHINS proceeding supports this finding. DCS, however, contends that the finding amounts to nothing more than harmless error. "[E]ven an erroneous finding is not fatal to a trial court's judgment if the remaining valid findings and conclusions support the judgment, rendering the erroneous finding superfluous and harmless as a matter of law." *Curley v. Lake Cty. Bd. of Elections & Registration*, 896 N.E.2d 24, 32 (Ind. Ct. App. 2008) (citation omitted), *trans. denied*. We agree with DCS that the juvenile court's error does not necessitate reversal of the dispositional decree. Evidence of Father's illegal drug activity in the home shared with the Children, which was clearly the focus of the juvenile court's attention, along with evidence of physical abuse of Child N.J. and Child N.J.'s fear are more than enough to sustain the juvenile court's determination that the Children are CHINS. Any error the juvenile court made in finding that the Children were inadequately supervised can only be considered harmless. Father has failed to establish that the juvenile court's disposition is clearly erroneous.

The judgment of the juvenile court is affirmed.

Pyle, J., and Altice, J., concur.