# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 04 2016, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
MOTHER

Amy Karazos
Greenwood, Indiana

ATTORNEY FOR APPELLANT FATHER

Steven J. Halbert
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: J.D., a Child in Need of Services,

B.D. (Mother) and W.D. (Father),

*Appellants-Respondents*,

v.

Indiana Department of Child Services,

*Appellee-Petitioner*,

and

Child Advocates, Inc.,

*Appellee-Guardian Ad Litem.*

November 4, 2016

Court of Appeals Case No. 49A02-1604-JC-721

Appeal from the Marion Superior Court

The Hon. Marilyn A. Moores, Judge

The Hon. Rosanne Ang, Magistrate

Cause No. 49D09-0508-JC-2373

**Bradford, Judge.**

# Case Summary

Appellants-Respondents B.D. ("Mother") and W.D. ("Father") (collectively, "Parents") appeal from the juvenile court's determination that J.D. ("Child") is a child in need of services ("CHINS"). Parents adopted Child when he was approximately ten or eleven years old. In July of 2015, sixteen-year-old Child ran away from home for the sixth time. When Child was found, he lied about his and Parents' identities and was placed in the Children's Bureau. In early August, Child was emergency-placed in acute inpatient treatment at Options Behavioral Health. Meanwhile, DCS had requested permission to file a petition to have Child declared a CHINS, which it did approximately one week after Child's identity was discovered and Parents were notified.

In mid-September of 2015, Child was moved to the Southwest Indiana Regional Youth Village in Vincennes ("Southwest") and eventually placed in their semi-secure Male Residential Program. Appellee-Petitioner Indiana Department of Child Services ("DCS") Family Case Manager ("FCM") Sheila Fakhreddine had recommended that Child be so placed to protect himself and others. In February of 2016, the juvenile court held a hearing, and, in March of 2016, determined Child to be a CHINS. The juvenile court ordered that Child be continued in his current placement at Southwest and issued a Parental Participation Order for Parents which ordered them to participate in home-

based therapy, engage in Child's treatment as recommended, and engage in family therapy with Child.

[3] As restated, both Parents contend that the juvenile court's determination that Child was a CHINS due to their inability to effectively parent him was clearly erroneous. DCS and Appellee-Guardian Ad Litem Child Advocates, Inc., contend that the juvenile court's adjudication is not clearly erroneous. Because Parents have not established that the juvenile court's judgment is clearly erroneous, we affirm.

# Facts and Procedural History

[4] Child was born on July 12, 1999, and was adopted by Parents in 2011. Prior to his adoption, Child had been in foster care, had exhibited behavioral issues both at home and in school, and had trouble socializing with his peers. According to foster care specialist Rikke Hopper, Child did not exhibit behaviors that would specifically indicate he had been sexually abused prior to his adoption. In late July of 2015, Child ran away from the home he shared with Parents in Marion County for the sixth time.

[5] DCS Family Case Manager ("FCM") Sheila Fakhreddine became involved with Child's case on August 6, 2015, after Child was found on the street and taken to DCS by an Indianapolis Metropolitan Police Officer. Initially, Child would not correctly identify himself or Parents and was placed at Children's Bureau. On or about August 11, 2015, following an incident at Children's

Bureau, Child was emergency-placed at Options, which led to his identification because Parents had placed him there for "probably about a week" in 2014. Tr. p. 52.

[6] FCM Fakhreddine met with Parents after their identification. During the meeting, Mother indicated that Child frequently ran away and that she and Father had difficulty disciplining Child appropriately. Parents indicated that Child had run away from home six times overall and four times in 2015. Parents also indicated that they were unwilling at that time to take Child back into the home. Parents indicated that they were not aware of Child's history of sexual abuse and that, if they had been aware, they would not have fostered or adopted him because they are unable to handle such a situation. In mid-September of 2015, Child was placed at Southwest, and Parents were referred for home-based therapy. On November 20, 2015, the juvenile court granted DSC's motion to place Child in Southwest's semi-secure residential facility because another youth had "received bodily injury at the hands of [Child.]" Tr. p. 22.

[7] On February 23, 2016, the juvenile court held a CHINS fact-finding hearing. FCM Fakhreddine testified that Mother had visited with Child at Southwest once since his placement in September of 2015 and that Father had not visited at all. FCM Fakhreddine recommended psychological evaluations and home-based therapy for the family. During the hearing, Parents agreed that Child should be found to be a CHINS but argued that it should be on the basis that Child was substantially endangering his or another's health pursuant to Indiana

Code section 31-34-1-6 and not due to parental neglect, inability, or refusal to supply Child's needs pursuant to section 31-34-1-1.

[8]     At the conclusion of the hearing, the juvenile court made the following statement on the record:

> Thank you. As far as DCS' petition is concerned, my intention is to issue a ruling so that everyone knows today and a formal order will be issued following today's date with the specific findings. A few things, the last testified information regarding the treatment that was attempted was the Options placement in 2014 that last[ed] a week or a month and that's per [Mother's] statement. In 2015, the child runs away six times. There was no information about treatment attempts in 2015. In fact, the information is as [of] the filing of the petition [Mother] has visited once, [Father] hasn't visited at all. What's also to be noted is that the testimony from Ms. Hopper was that at the time that she worked with the child he did not have these behaviors and that was as of the adoption approximately six years ago. I understand that there's ramifications as far as a substantiation or not, but at the same time I don't feel that the testimony yielded that parents did everything they could. I don't feel that after having a child for six year[s] that the therapy and the week or month of 2014 falls within everything they could do, and when I look at these cases when it's either a CHINS [finding pursuant to Indiana Code section 31-34-1-1] or a CHINS [finding pursuant to Indiana Code section 31-34-1-6] there are benefits to the CHINS [finding pursuant to Indiana Code section 31-34-1-6] to the parents and I understand that, but at the same time if I were to find that this entire situation falls in the lap of a sixteen year old, the therapeutic ramifications of that finding I feel are more severe, and so while I, I certainly it is certainly not my intention to financially effect your family by any means. I understand that that decision is somewhat mine right now, but at the same time I have a child who needs a lot help by parents['] own admission

needs a lot of help, and by parents own admission that they are not able to address right now, and so if I bring this sixteen year old child and say, "[Child,] you are in this because you are a danger to yourself and others", I feel that therapeutically that the parents run the risk of never fulfilling their role in this child's treatment and I feel that this is not a blame situation. Under Section 1 it is unwilling or unable. I think absolutely unable. Unwilling, to be honest, is yet to be determined because what I find when I hear that only one visit has happened, no visits have happened in six it's actually that placement was September, so five months, I personally have to question the willingness piece, but I think that I'm very confident in being able to say unable and so for all of those reasons I am not willing to find that [Child] is a child in need of services under Section 6 and I am finding that he's a child in need of services under Section 1. Like I said, a formal specific findings will be issued prior to the disposition so that that exists and things can be done as they need to be, but I am going to find that that's true under Section 1. So, we'll set the matter for disposition in about thirty days.

Tr. pp. 66-68.

[9] On March 16, 2016, the juvenile court issued its order finding Child to be a CHINS and findings supporting the determination, which provide, in part, as follows:

> 7. [Child] did not exhibit behaviors indicative of sexual abuse prior to being adopted by [Parents].
>
> 8. [Parents] placed [Child] at Options for "a week or a month" prior to the filing of this cause of action.
>
> 9. Since the filing of this action, [Child] has exhibited concerning behaviors and has been aggressive with other residents.

10. Since September of 2015, [Child] has been placed at [Southwest]. [Mother] has visited [Child] once since this placement. [Father] has not visited [Child] at all.

11. [Child's] physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of [Child's] parent, guardian, or custodian to supply [Child] with necessary food, clothing, shelter, medical care, education, or supervision. [Parents] have been unable to obtain treatment for [Child's] mental health needs and have expressed that they are unable to care for [Child] with his current mental health needs.

12. [Child] needs care, treatment, or rehabilitation that he is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court. [Parents] require assistance in learning how to parent a child with [Child's] emotional needs. [Child] needs assistance in addressing his history or trauma, current behavioral needs and aggression. The intervention of the court is necessary to provide all parties with the necessary treatment and provide [Child] with his necessary level of care until he can safely return to the home of [Parents].

Mother's App. pp. 126-27.

[10] Mother and Father both appeal, contending that the juvenile court erroneously determined that Child is a CHINS on the ground that his physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of Parents to supply him with necessary food, clothing, shelter, medical care, education, or supervision.

# Discussion and Decision

With respect to CHINS determinations, the Indiana Supreme Court has stated the following:

> [a] CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the [juvenile] court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the [juvenile] court was clearly erroneous. *Id.*
>
> …
>
> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. *In re N.E.*, 919 N.E.2d at 105.

*In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (footnote omitted).

Parents take issue only with the juvenile court's reliance on Indiana Code section 31-34-1-1 ("Section 1"), which provides that a child is a CHINS before the child becomes eighteen years of age if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the

child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

    (A) the child is not receiving; and

    (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[13]    "The CHINS statute … does not require that a court wait until a tragedy occurs to intervene." *In re A.H.*, 913 N.E.2d 303, 306 (Ind. Ct. App. 2009) (citing *Roark v. Roark*, 551 N.E.2d 865, 872 (Ind. Ct. App. 1990)). "Rather, a child is a CHINS when he or she is endangered by parental action or inaction." *Id.*

[14]    Parents do not argue with the juvenile court's determination that Child is a CHINS, only with the basis for that finding. Parents argue that the juvenile court's conclusion that Section 1 was satisfied was clearly erroneous because the record did not contain sufficient evidence that Child's physical or mental condition was seriously impaired or seriously endangered due to their neglect. Instead, Parents contend that the juvenile court should have found Child to be a CHINS on the basis that he substantially endangered his health or the health of another individual:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

    (1) the child substantially endangers the child's own health or the health of another individual; and

    (2) the child needs care, treatment, or rehabilitation that:

        (A) the child is not receiving; and

        (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-6 ("Section 6"). As mentioned, we may not reweigh the evidence and reverse upon a showing that the juvenile court's decision was clearly erroneous. *In re K.D.*, 962 N.E.2d at 1253. As such, we may only reach the question of whether the juvenile court should have applied Section 6 if we conclude that its determination under Section 1 was clearly erroneous.

[15] We cannot say that Parents have established that the juvenile court erroneously applied Section 1 to this case. The record contains evidence sufficient to sustain the juvenile court's findings that Child did not exhibit behaviors indicating sexual abuse before his adoption, Parents had placed Child with Options for only a short time in 2014, Child has run away from home six times with no further attempts by Parents to provide him treatment, Mother had visited Child once since Child's placement at Southwest in September of 2015, Father had not visited Child at Southwest, Parents have indicated they are unable to effectively care for Child currently, and Parents are in fact unable to parent Child at this time. These findings support the juvenile court's conclusion that Parents are unable to currently care for Child, and are perhaps also unwilling to do so.

[16] Both parents offer alternate interpretations of the evidence which arguably could support a conclusion that Child's need for care was not due to Parent's inability to effectively care for him. In our view, the juvenile court's interpretation was reasonable, even if the evidence could have potentially supported another interpretation. Advancing alternative interpretations of the evidence amounts to an invitation to reweigh the evidence, which we may not

do. *See id.* Because Parents have failed to establish that the juvenile court's disposition based on Section 1 is clearly erroneous, we need not address their claim that a disposition based on Section 6 would be more reasonable.

[17] The judgment of the juvenile court is affirmed.

Pyle, J., and Altice, J., concur.